Good morning. We'll start with U.S. v. Munchak. We've left 13 minutes for the court. Did you want any reserved time? Of course, Commissioner, we'll divide the time, 7 for me, 8 for Ms. Mathewson, 9 for Ms. Mathewson, and we'll start with Ms. Mathewson, taking a minute of her time. Thank you. My name is Peter Goldberger. It's my responsibility and privilege this morning to represent the appellant Robert Cordell, who is one of the defendants below. Our brief has presented, I believe, two strong reasons requiring the trial on both counts. The proper cross-examination of the defendant and the exclusion of significant testimony from three defense witnesses. And I do hope to at least discuss the cross-examination issue if time permits, but I respect the court's advice to start with the discussion of the indictment, of the sufficiency of some counts of the indictment. My concern about that was why did you not raise that during the trial, before the trial? I mean, wasn't it obvious at that time? Well, I wasn't involved, so I can't answer that in first person, and it's always difficult to go outside the record and answer the why question. I cannot expect that the counsel didn't notice, or should have noticed, but I do think it's obvious, and it certainly qualifies as plain error, and in any event, Rule 12b specifically extends this issue from any requirement to be raised before trial. I don't have any reason to think and don't suggest that it was deliberately not raised before trial. Can I ask you, are you doing Monshack and Cordero together? I'm representing Cordero, but we coordinated our briefs. We cross-adopted. Oh, that's why you have two. That's why you have two counts of two. It's often complicated. Two of the three counts apply to both of them. I'm talking about the pleading issue. But you're doing Cordero. But I'm doing Cordero, right. The count 25 of the three I'm talking about didn't happen to charge Monshack, so it's not pertinent to him. Okay. Well, my concern about the indictments was why it was not raised before, because there are lawyers who strategically would purposely not raise something like that, but to have... I hope I'm not, but if the rule allows that, I don't have any reason to think that that's the case here. What we have is a different standard of review, which accounts for that possibility, at least, of all the issues that come within the trial, we will look more meaningly at the drafting of the indictment on appeal if it wasn't raised before. That's the difference. Actually, yeah, I was going to follow up on that point, because now we have to look at the validity, which seems to me to be very high hurdle. It is. We've prevailed in enough cases on that issue sometimes. Sometimes you don't. And let's look at this particular indictment. Okay. So we have count 13, who's charged under the general conspiracy statute. These are all conspiracy counts that we're talking about here, and it has to do so. We have two layers of complication. We have the issue we were just talking about, and also that conspiracy to commit another offense. There is a case law saying it does not have to allege all of the details about the other offense in the same way you would expect a substantive count charged in that offense. So we have in count 13 a conspiracy to violate section 666, which makes no mention of the principle mens rea of offense corruptly. But we know that under the substantive of the law of conspiracy with respect to mens rea, the government has to prove in cases that at least certainly the same mens rea for conspiracy as for the substantive offense, conspiracy to commit an offense. Therefore, it follows that a conspiracy to commit a 666 offense must be also engaged in corruptly in the sense used in 666. That being an element that has to be proved, it has to be alleged in the indictment. It's omitted. I mean, is there anything there I'm wondering which says that the indictment charges of conspiracy need not specifically prove all the elements of the law with this? Not only in the law, but in all settings. Both of which precede Skinner. And Skinner, which discusses those cases and clarifies and establishes the principle law of the circuit on this subject, wasn't talked about and has about an interstate commerce element, the federal jurisdiction element. We have that defect in counts 19 and 25 here. 19, where the interstate commerce element hops for object extortion as an effect on commerce. In general, it would affect commerce were it to be consummated. That's not alleged in words or substance. And I say or substance because of the liberal construction element in count 19. Likewise, in count 25, there's nothing about the interstate commerce impact of the alleged But if you think of the purpose of the charge in the indictment, which is to apprise the defendant fairly of the charge, and what the defendant must defend the child. Did the indictment, in this case, serve that purpose? The indictment serves multiple purposes. That is a critical purpose. And for that purpose, we look principally at the purpose of the charge, the factual detail of the indictment. And that is important. That protects against double jeopardy if there's another indictment later or a variance or constructive amendment. But there's also the requirement that the indictment show very federal jurisdiction that allege that the case charges a federal offense. And that means that essentially the elements must show a federal offense. Without the jurisdictional element, we simply don't have the allegation of a federal offense. We don't have a federal indictment. We're fundamentally missing the core of the Fifth Amendment right of not to proceed except upon indictment in a federal case. So your point is that in every indictment, the U.S. attorney has to link the offense to the commerce clause in one way or another. Whatever is the basis of federal jurisdiction. In the 666, it's not commerce clause. It's affecting a program, receiving federal funds, and maybe a spending clause requirement or a commerce clause requirement or whatever it may be, the post office, or whatever it is. Yes? Have we ever required retention requiring part of an indictment? It does require part of an indictment. Essentially, again, there are slight changes to the circumstance. Do you want to mention quickly? I am already out of my seven minutes, but I do want to say with your permission, thank you, that the cross-examination of Mr. Cordero at trial was entirely structured around the cross which was prohibited by this court in Harris and reaffirmed in the audience's opinion in Vitiello. And the reason it is plain error here and was not in Vitiello, if I can just finish with that thought, is that there was not here the independent corroborating evidence as in Vitiello, the dual sets of time cards, if I remember correctly. Here we have a credibility case, and this rule protects against unfair credibility attack in cross-examination where the defendant or another witness is asked to comment on the credibility of the government's witnesses. Aggravated by the government's closing, which proves the prejudice here, where it's a theme of the government's closing, and what the prosecutor said in closing greatly exaggerated what was actually brought out on the cross. Is there something to be said about the fact that he took the witness stand and said, I'm going to answer any question about anything that you want to ask me? I don't think. That was certainly an unusual tactic by trial counsel to do the direct that way. The government didn't object to it. The judge allowed it. I don't believe that comment could possibly be considered as a way of looking at rules of evidence or at this court's case law that define the scope of cross. That's all. Thank you very much. Good morning, Your Honor. Lisa Matthewson representing Appellant Nunchak. As Mr. Goldberger noted, we do join in the issue that Mr. Goldberger just addressed. There were four additional issues raised in our brief. Two, plain error review of instructional error, one on the Hobbs Act and one on the Section 666 charge. The requirement of spillover, the spillover prejudice that would also require reversal of the tax count against Mr. Nunchak if the corruption counts are reversed. And finally, the impropriety of the district courts having enhanced Mr. Nunchak's sentence for obstructing justice. Your Honor, on the Hobbs Act question, this is on plain error review, but the Hobbs Act instruction in this case was plain error because it collapses two elements that both the Supreme Court in Evans and this court in Urban have treated as distinct. Those two elements are the so-called status element of the offense, that is the authority to take official action or the ability to take official action. Would you be suggesting that we review or revise the Third Circuit non-majority instructions, which is really what the judge gave in this case? The non-construction is incorrect, Your Honor. Absolutely, that is our position. I don't think we have the power to do that. I think that requires an in-bank. Well, Your Honor, the model instructions are not binding on this court. As the court well knows, the court does not approve them. In fact, in some case law, it is referred to them as, quote, rather tangential authority, and they simply reflect no judgment of any judge of this court. And particularly because the instructions here contradict the Urban case and contradict the Evans and McCormick line of cases in the Supreme Court, they certainly cannot be treated as authority. So Your Honor's question, asking whether they need to be revised, they need to be revised, but not by this court, because they are not a commencement of this court to begin with. Could you point out what the problems are? In the instructions, Your Honor? Yeah, where the differences are, sure. Absolutely, Your Honor. The key difference, which we're going to learn in this case, is the reference to the mental state of knowing that it's on behalf of the public official, knowing that he's being offered a payment in exchange for his ability to do official acts. The instructions reproduce in its entirety, in my brief, at pages 12 and 13, in the appendix at 934 and 35. That statement, however, Your Honor, is the key error here, because referring to the exchange of an ability, in addition to being really somewhat nonsensical, is nowhere in the case law, and it collapses two critical elements of Hobbs Act extortion, one being the inducement. As the Supreme Court in Evans said, there need be no inducement, no better force, for example, for a cover of official right extortion, because what is called the status element of the offense, that is, the ability to take official actions, supplies the inducement. But that is separate from the question of the quote-unquote exchange. And the problem with the instruction that the district court gave here is that it collapses the two. It said the exchange is for the ability to do official acts. That problem is compounded, Your Honors, by both the beginning and the end point of the instruction, in which the district court also said, number one, that a defendant commits the crime of extortion if he uses his office to obtain a thing of value to which he is not entitled. Again, that is referencing the mere status as a public official, absent an exchange in defining it as a crime. The trial judge then ended the instruction by saying, you must find beyond a reasonable doubt that the defendant public official, again, used his office in order to obtain a thing of value. That criminalized the status of being a public official while receiving a payment, and it entirely omitted the requirement of a quote-unquote. Now, the government points to one part of the instruction where the trial judge did reference language in return for, in return for an official act. And as I noted in a footnote in my brief, we think that that language itself has some problems, but we're not raising that as a separate claim of error. What would you have preferred? I mean, in return for seems pretty clear to me. In exchange for, in commission, or the ability to do an official act? My quibble with that language, Your Honor, is actually not so much an aphorisiology in return for, but it's the reference to in return for influencing. So what it says is taking or refraining from an official act or influencing an official act. Doesn't that satisfy the quibble? I think it's... Your Honor, I don't think that it's 100% because of the reference to influencing. It is not consonant with this court's case law on quibble. But again, that's not a separate claim of error. I would point to that sentence as the closest that the trial court came to a correct instruction. And with that being the closest, it does not cure the error. Your Honor, on the 666 instructions, they are also plain error for a different reason. First, this court has never held that 666 requires a quid pro quo, but as then-Chief Judge Becker told us in the Evans decision, the fact that there's no control in the circuit authority is not determinative of whether there is plain error. Every single circuit, Your Honors, to have addressed the question of quid pro quo in 666 has held that 666 bribery requires a quid pro quo. There are differences in the interpretations, Your Honor. The circuits differ on whether it requires a specific quid pro quo or an express quid pro quo. The circuits differ on whether 666 permits a gratuity theory in addition to a bribery theory. But no one has disagreed that 666 bribery requires a quid pro quo, and the government here made a critical concession in its brief. The only disagreement between the parties in this case is whether the reference to the reward language may have confused the jury into thinking that it could convict on a gratuity theory. But the government has expressly disclaimed any intent to rely on a gratuity theory, which means that the case law holding that 666 prohibits gratuities is irrelevant to this court's decision. The only question for this court, and I'll refer the court to then-Judge Sotomayor's opinion in the Gannon case, is whether the reference to reward improperly commits conviction on a gratuity theory that was not charged here, and we submit that it does. Thank you. Okay? Thank you. We'll hear it from the government. May it please the court, my name is Bruce Gannon, but I'm an assistant United States Attorney. I represent the United States along with the Council of Norway. You're the U.S. Attorney for where? The Middle District of Pennsylvania. Oh, I don't think I've ever seen you. I don't think you've been around for 34 years. I've been here 26. And I've been here before, but I don't think you have been on one of my panels. But I'd like to start with Judge Roth's question that she posed to Mr. Goldberg about why doesn't it raise the bar? And I would posit an explanation, and following up on Judge Ferrante's comment that the primary reason for the indictment was to give the defendants notice of the charges. They knew what the charges were. This was a 52-page indictment that charged them with multiple counts of corruption, of taking bribes, of external payments from numerous people. The fact that Count 13 omitted the word corruptly from that charge did not put them down a path of deception and deceit that they didn't believe that the government was charging them with corrupt acts. So they were very well noticed that they were being charged. Does Count 13 include by reference substantive acts? It includes various paragraphs of prior counts. And I would direct the court's attention to paragraphs 7 and 8 of Count 1 of the indictment, which was the Out-of-Services Mail Club count. And in those counts, it told the defendants that they solicited bribes and kickbacks as part of this scheme, this pay-to-play scheme. So we would submit that that put them on notice that the government was charging them with acting corruptly. They were soliciting bribes and kickbacks in paragraphs 7 and 8. In addition, on Count 25, which was one of the other counts challenged by the defense here, did not include the claim that we didn't specifically allege the knowledge that the proceeds were illegal proceeds. And I would direct the court's attention to Counts 17 and 20 of the indictment, which were incorporated by reference, which were the specific substantive counts of charging bribery and extortion relating to the proceeds that were referenced in Count 25. That put them on notice that the proceeds that were laundered were illegal proceeds. They were coming from bribes and extortionate payments. So following up, just to continue, they were not aware through this indictment, through the incorporated language, of the supposedly missing elements in these counts. But the Count 19, which was the last count that was attacked, that was merely an interstate commerce effect allegation that was claimed to be missing. But in that count, there was also incorporated language. I would direct the court's attention to Counts 9, 10, 11, 12, which talked about use of the mails and commercial interstate carriers. I would direct the court's attention to Paragraph 16E, which talked about contracts to do work at the Woods Bay International Airport. I would direct the court's attention to Paragraph 16H, which talked about a trip that Mr. Goldberger took to California that was a big game act for a contract that he had granted to one of the victims in this case. There was a plethora of interstate commerce in these counts. So to say that they were not on notice of this, I really would submit, is far-fetched. And the case law is clear that we don't even have to go that far in a conspiracy count. Mr. Goldberger has cited the court to the Spinner case, but he fails to mention that the Spinner case was not a conspiracy case. That was an access device fraud, substantive count, that had a missing element. Conspiracy charges, as the court pointed out earlier, are in different ballparks. You need not allege all the substantive elements from the underlying offense in a conspiracy case. The case law of the circuit has repeatedly held that going back, the little one, the Wander case, as Judge Sloboda mentioned, is not... Sloboda, excuse me. I had to leave Sloboda, that's why. That's what I did. Never before, I apologize. Knox-Cole is another case, and it goes back to the Supreme Court with Wong's son in 1927. This is a standard practice in conspiracy indictments not to allege all the substantive elements, which in these cases were alleged in any event. I would like to also point out to the court a case that was not cited by either party in the briefs, but it's one that Mr. Goldberger is very familiar with, and I hope he'll talk about during his rebuttal. It's called United States v. Chardock. What's the second name? Chardock, C-H-A-R-D-O-C-K. 1983, Federal Appendix 948. 2008, Westwood, 2569. It's a 2008 case. Now, Mr. Goldberger... Does that make it all the more recent? Does it make what? Does it make it all the more recent? No, I don't think... It's more recent than the 1991 Warren case, that's all. Actually, there is a more recent case on this issue that is mentioned in the briefs. It's called Sabok, and that's from 2009. I think that's the most recent precedential opinion on this area about conspiracy charges. But this 2008 case I bring up, because it dealt with the men's wear element, which Mr. Goldberger seems to think fits into a different category here. And it was an honor services fraud, a conspiracy to commit honor services fraud, where Mr. Goldberger made the same exact argument before this court. There, saying that the indictment, the conspiracy indictment, failed to allege the state of mind of the defendant, and that he had to know about the public official's duty to disclose his conflict of interest. And nowhere in the conspiracy indictment was that alleged. This court rejected that. That was an unpublished opinion. We're not bound by it. We're certainly not bound by it. But Mr. Goldberger has complained in his reply brief that we only cited one case for this proposition, an Aunt Freddie case, which was a district court case. I'd like us to take the opportunity to remind Mr. Goldberger of this other case that he personally argued that was rejected on this issue. So I want to get that out. On the cross-examination, before I get to the cross-examination, I just want to say one other thing before I get to the cross-examination, Mr. Goldberger's reply brief. Very good. On the jury instructions, I think there's a very simple answer. It's plain error review. It was not called to the attention of the district court during the trial. No complaints were raised about those instructions. For this court to reverse based upon a supposedly erroneous instruction, the error has to be clear and obvious. The district court, without getting any complaint from either side, would have had to on its own realize that there was an error so clear and obvious despite using the model jury instructions promulgated by this court. Which are not binding. Which are not binding. But should we suggest that those instructions perhaps were revised? I don't think so. I do disagree with Ms. Mathewson's characterization that the instructions are in error. We believe that the instructions are accurate as far as the rivalry end of that. They were prepared by a really fine group of judges. I remember when they were working on them. Judge Pollack was part of that group. These are complicated issues as well. So on plain error review, not only do you have to have an error, it has to be clear and obvious. You have to say to Judge Caputo that this was so clear and obvious you should have picked this up on your own despite not having had any complaints from any of the parties and the fact that you used exactly verbatim instructions by all these people. We believe on the jury instruction issue, whether or not there was error, it certainly was not clear and obvious to support plain error review. So that's my answer on the jury instructions. Mr. Cordero and Mr. Goldberg have replied to his next statement that I want to address also. On page two, he said that a public official who agrees to receive payments intending to be influenced in his official actions has not agreed to commit bribery in violation of 666 unless he also agrees to do so corruptly. We disagree with that. The corrupt part of the men's... If you look at the statute closely, the 666 statute, it's written in the disjunctive. The corrupt portion of the men's way applies to the corrupt solicitation and demand of cash in exchange for official action. It then goes on to say that the statute can be satisfied or by accepting or receiving cash in exchange for official action with the intent to be influenced. There are two separate men's ways in that statute. There are two different ways to violate the statute. So the statute doesn't fail even if the corrupt language is not in it. The statute is written in the disjunctive, which Mr. Goldberg finesses and glosses over in his brief. So even assuming that it wasn't there and it had to be there, it wouldn't make the cap fail. So what does it do? At its most basic, it's receive cash in exchange for official action. With the intent to be influenced. Or not committing official action. And the intent element on that second half is with the intent to be influenced. That's the intent, not the corrupt intent. The corrupt part deals with to corruptly solicit or demand cash in exchange for official action or to receive or accept cash in exchange for official action with the intent to be influenced. So it doesn't even apply to the entire statute. And I just wanted to raise that as far as... Because even in addressing the person's immigration, I found a little troublesome also. The U.S. Attorney was questioning Cardano and asking him, was that government witness lying when you said something? I was the prosecutor. I was there. Somebody give me my insight. I did ask those questions. I did ask those questions. And as Judge Fuentes performed earlier, it was an indication to ask those questions. Defense counsel, Mr. Costopoulos, who's a very well-known high-profile lawyer in the state, made a very dramatic entry into this direct examination. As the court will see, it was a very abbreviated direct examination. They never discussed the charges. They called it unconventional. I dispute that. I think it was a trial tactic. As Mr. Goldberg indicated, it was a tactic to make Mr. Cordero appear so forthcoming he was willing to answer anything that the government put at him, whether or not it may be appropriate, because he had nothing to hide. This was a trial strategy. It backfired because I think, I submit, the government was entitled to take Mr. Costopoulos up on his offer and ask him any and all questions about any witness, any piece of evidence, and any allegation. It was a reasonable use of evidence. It's exactly what it was. And we were entitled to take him up on it. Now, Mr. Goldberg may have disagreed with that trial tactic. He may have done it differently had he been trial counsel. But the defendant can't have it both ways. He can't have his cake and eat it. He can't try and pose in front of the jury in one way and have his appellate counsel complain about a violation of the rule when the tactic backfired at the end of the day. But that's another reason why even under Harris the cross-examination was appropriate. Under Harris, the court gave one example. A non-exhaustible list of examples of ways that this kind of questioning can be appropriate. They said if the defendant opens the door, you can ask the defendant, did a witness lie? It's generally improper, but there are certain situations where it becomes appropriate. The example given in Harris was, for instance, if a defendant on direct examination says the witness lied or claims the witness lied, then you can follow up on cross and inquire about that. Now, in this case, there wasn't a direct examination because Mr. Kostopoulos, you know, tried to open the door. But you know, we need a question like that. Why did he hit Mr. Kostopoulos? It couldn't be that he opened the door to you asking about, well, the other witnesses. Yes. Because what I'm getting to is on my cross-examination, when we started, we asked Mr. Kogel a very broad question. And it's on the jury appendix, page 557. And this was the question. And this was prior to me asking him any question about any witness, about whether or not that witness lied or not. The question was, and during your administration, the four years of your administration, you personally got over $400,000 in cash. Well, let's stick with cash currency. You personally got over $400,000 in cash by shaking down various businessmen who were trying to do business with Lackawanna County. Is this his answer? Completely false. Completely false. And you, you and the government, for whatever things they did, that you had on them, gave them immunity to come up here and tell the story that he wanted told, not the truth. To tell the story. Tell stories. Now, that wasn't an isolated comment. That was the drumbeat from the opening statements on when we cited in our brief how they alleged that every witness that the government called was either a liar or threatened or testified falsely because of an immunity rule or whatever. Mr. Cordero, before we asked him any questions whether the witness lied, opened the door where he said they were all ending up stories. So then, I submit to you the government board's entitlement under Harris to ask him, are you saying this witness lied? Did they tell a story? Did this witness lie? I submit he opened the door under Harris. That's enough. Thank you, Mr. Van Hoover. Thank you. Thank you. I've never heard my own name used that often. I went back and checked the local program and I have no regrets. I'm going to make two points on rebuttal. One is about the Karakuri element of 666 and the other about the cross-examination. The argument, as I heard Mr. Brandler make it just now, about the Karakuri doesn't modify anything but the first clause of section 666A1B is not an argument they made in their brief. So this is just a quick reaction without having done any research. It's wrong grammatically and there was no case law authority for that meeting of 666. Karakuri is the mens rea for that statute and all the sub-clauses of that sub-section of the statute. And it's our recollection, my colleague Ms. Matthewson's in line, that there was a Supreme Court case, possibly Flores-Figueroa, within the last couple of years about how far a mens rea adverb travels grammatically down a set of clauses in which the Supreme Court talked about the rules of grammar in how to read a statute of that kind. I think that would be a few of the points that Mr. Brandler said about it. Why? What does it mean as to how? To conclude that corruptly used at the beginning of this sub-section modifies all of the ways of violating the statute within the sub-section, including the one I mentioned here. Well, Mr. Brandler argued that corruptly is not the mens rea for the charge defense because reading the statute, the word corruptly doesn't attach to the relevant clause. But that is correct. I believe you would find no case law supporting that. May I speak to the prosecution for a moment? You still have a... We're giving it to you. Thank you. I just want to say then, Harris, when he talks about opening the door, talks about the defendant opening the door on direct. What Mr. Brandler wants to do is push that door open and say that if he, as the prosecutor, if any prosecutor, if any prosecutor, can get the defendant on cross-examination to suggest that a witness lied, or to use the word lied, which Mr. Cordero did not do, by asking some question other than, did the witness lie, then the defendant has opened that door to further improper questions on cross. The prosecutor gets to open his own door to his own improper questions. That, coupled with the last thing that happens, it cannot, it is not a reasonable reading, and I would not suggest that, and I hope the court will expressly say that the defense did not, whatever its tactical purpose, would have been doing this on conventional direct. It certainly did not waive the rules of prosecutorial misconduct or of evidence inviting improper cross-examination. The defendant could not have been cross-examined with the illegal wiretap evidence that had been suppressed on racial grounds because he said, I'll answer any question you want to ask. Thank you.